AE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

OAKTON DISTRIBUTORS, INC., an )
Illinois corporation,          )
                               )
          Plaintiff,           )
                               )
     v.                        )
                               )
U-LINE CORPORATION, a          )   No. 06 C 1353
Wisconsin corporation, PHILIP  )
J. UIHLEIN, a Wisconsin        )
resident, HENRY UIHLEIN, a     )   Magistrate Judge Arlander Keys
Wisconsin resident, and        )
MARNIE UIHLEIN OMER, a         )
Wisconsin resident,            )
                               )
          Defendants.          )

**MEMORANDUM OPINION AND ORDER**

The plaintiff, Oakton Distributors, Inc., distributes and sells trademarked appliances and related products that are ultimately sold, via Oakton's retail outlets, to consumers. U-Line Corporation manufactures and sells ice makers, refrigerators, undercounter wine storage units and other related products. Oakton and U-Line executed two "Distributor Agreements," giving Oakton certain rights to distribute, on the wholesale level, various U-Line products. On June 13, 2001, Oakton and U-Line signed an agreement granting Oakton the right to distribute, on the wholesale level, various U-Line products within certain specified parts of Illinois and Indiana and under the terms set forth in the

agreement. The parties later amended that agreement to broaden the scope of Oakton's territory; under the amendment, Oakton was granted distribution rights in Wisconsin, Minnesota, North Dakota and South Dakota, in addition to those portions of Illinois and Indiana specified in the original agreement. The parties signed a second Distributor Agreement on December 4, 2003, giving Oakton the right to distribute, on the wholesale level, certain U-Line products in West Virginia and Kentucky, as well as parts of Ohio and Pennsylvania.

By their terms, the Distributor Agreements remained in effect until terminated, and they provided that either party had the right to terminate at any time by giving at least 30-days' prior written notice. See June 13, 2001 Distributor Agreement, ¶¶4-6(a); December 4, 2003 Distributor Agreement, ¶¶4-6(a). The Agreements gave U-Line some additional termination rights, though those provisions are not relevant for today's purposes. See June 13, 2001 Agreement, ¶6(b), (c); December 4, 2003 Distributor Agreement, ¶¶6(b), (c).

Both Distributor Agreements also contain a paragraph entitled "Compliance with Law, Venue," which reads as follows:

> (a) The illegality or unenforceability of any provision of this Agreement shall not impair the legality or enforceability of any other provision. This Agreement shall be governed, interpreted and construed under the laws of the State of Wisconsin.
>
> (b) Any action, claim, suit or proceeding between U-Line and Distributor, including, but limited to, those

connected with, arising out of or related to this Agreement or which in any way involves the relationship between U-Line and Distributor, whether in contract, tort or statute, shall be initiated and prosecuted as to all parties and their successors and assigns, solely and exclusively in the United States District Court for the Eastern District, State of Wisconsin, and each party waives, freely and completely, any right to dismiss and/or transfer any action pursuant to 28 U.S.C. §1404 or 1406, and any successor statute. In the event said District Court does not have subject matter jurisdiction of said matter, then such matters shall be solely and exclusively under the jurisdiction of the appropriate state court of competent jurisdiction located in Milwaukee County, Wisconsin. The parties consent to in personam jurisdiction of the herein described courts.

See June 13, 2001 Distributor Agreement, ¶14; December 4, 2003 Distributor Agreement, ¶14.

On February 15, 2006, U-Line notified Oakton that, pursuant to ¶6(a) of the Distributor Agreement, it was terminating the Agreement and severing all ties with Oakton. See February 15, 2006 Letter from Philip J. Uihlein, President and CEO of U-Line Corporation, to Donny Danti, President of Oakton Distributors (attached as Exhibit 4 to the Complaint). In that letter, U-Line noted that, although it was contractually required to give just 30-days' notice, it was terminating the relationship 90 days from the date of the letter, giving Oakton additional transition time as a "gesture of goodwill." Id. U-Line represented that, during the 90-day period, it would continue to honor its contractual obligations to Oakton.

On March 10, 2006, Oakton sued U-Line, as well as Philip Uihlein, Henry Uihlein and Marnie Uihlein Omer, respectively the

3

company's president, vice president, and territorial manager. In its complaint, Oakton alleged violations of the Illinois Franchise Disclosure Act (Count 1), the Indiana Franchise Disclosure and Deceptive Franchise Practices Act (Count 2), the Wisconsin Fair Dealership Law (Count 3), the Minnesota Franchise Act (Count 4), the Ohio Business Opportunities Act (Count 6), the Kentucky Sales of Business Opportunities Act (Count 7), and Pennsylvania common law with regard to franchises (Count 8), as well as breach of franchise agreement #1 (Count 5), breach of franchise agreement #2 (Count 9), and tortious interference with a contract (Count 10).

According to its complaint, Oakton worked hard to market U-Line's products and to develop its U-Line franchise, to the point where Oakton's sales of U-Line's products exceeded $458,000 in 2001, $3,929,000 in 2002, $4,452,000 in 2003, $4,986,000 in 2004, and $5,987,000 in 2005. Yet, Oakton alleges, despite its performance, U-Line unilaterally decided to terminate the franchise agreements effective February 15, 2006. Further, Oakton alleges, although U-Line advised, in its Notice of Termination, that it would honor the franchise agreements for a period of 90 days, it failed to do so; in fact, Oakton alleges, U-Line almost immediately after sending the Notice engaged in a course of conduct that made it impossible for Oakton to fulfill orders for U-Line products or to otherwise do business with U-Line.

The parties consented to proceed before a United States

Magistrate Judge, and the case was reassigned to this Court on May 25, 2006. The case is currently before the Court on the defendants' motion to dismiss Counts 1 through 10 of the complaint under Rule 12(b)(6), and to dismiss Counts 1, 5 and 10 under Rule 12(b)(3).

## Discussion

U-Line argues that the bulk of Oakton's complaint (Counts 1 through 10) should be dismissed for failure to state a claim, and that a few of the counts (Counts 1, 5 and 10) should also be dismissed for improper venue. In its motion, U-Line asks the Court to "pare down" the case and then send what remains, if anything, to the Eastern District of Wisconsin, the forum chosen by the parties in the Distributor Agreements. Specifically, U-Line argues that this Court must dismiss Oakton's non-Illinois claims consistent with depeçage[1] principles and because it would be inappropriate for this Court to apply Illinois law to transactions that occurred outside the State of Illinois. U-Line also argues that the forum selection clauses in the Distributor Agreements require that these claims be heard in the Eastern District of Wisconsin, not in the Northern District of Illinois.

Before considering the sufficiency of Oakton's allegations,

---

[1] Depecage is "[t]he process whereby different issues in a single case arising out of a single set of facts are decided according to the laws of different states." Black's Law Dictionary, 436 (6th ed. 1990).

5

which is what U-Line's 12(b)(6) motion attacks, *see Pelfresne v. Stephens*, 35 F.Supp. 2d 1064, 1069 (N.D. Ill. 1999)(a motion to dismiss for failure to state a claim tests the sufficiency of the complaint, not the merits of the case)(citing *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990)); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)(a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"), the Court considers an issue left curiously untouched by the parties.

This diversity case arises out of two agreements entered into by an Illinois citizen and Wisconsin citizens, covering transactions that were intended to occur in the 10-state distribution area described in the agreements. Given the number of states involved, and the potential for conflicts among the laws of those various states, it is possible to imagine that the parties, wanting to provide an assurance of predictability and practicality, might decide that, despite the various states implicated in their relationship, it would be best for them to abide by the laws of a single, mutually-agreed upon state. This is hardly a novel tactic in interstate deals, and it is, therefore, not at all surprising that the parties here included a choice-of-law clause in their agreements. As explained above, both Distributor Agreements expressly provide that they "shall be governed, interpreted and

construed under the laws of the State of Wisconsin." *See* June 13, 2001 Distributor Agreement, ¶14; December 4, 2003 Distributor Agreement, ¶14.

What is surprising, is that U-Line has not invoked the choice-of-law clause. Nor does Oakton mention it, though that is less surprising. Instead, the parties have argued for or against dismissal based upon the doctrine of depeçage and upon a provision in an Illinois statute, which, if the choice-of-law clause were to apply, would seem to be largely irrelevant.

The Illinois Franchise Disclosure Act, which is one of the statutes Oakton invokes, includes a provision that states that "[a]ny provision in a franchise agreement that designates jurisdiction or venue in a forum outside of this State is void, provided that a franchise agreement may provide for arbitration in a forum outside of the State." 815 ILCS 705/4. The parties do not question whether the IFDA should be applied, they argue only about whether Oakton's complaint actually alleges a claim under the IFDA. But - and this is the puzzling part - if the choice-of-law clause kicks in, the IFDA never comes into play.

Under Illinois' choice of law rules, which this Court applies here, *see Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496 (1941); *Certainteed Corp. v. Williams*, No. 06 C 2992, 2006 WL 1762660, at *5 (N. D. Ill. June 27, 2006), a contractual choice-of-law clause will be respected if the contract is valid and

the law chosen is not contrary to the state's fundamental public policy. *Certainteed*, 2006 WL 1762660, at *5 (citing *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 705 (7th Cir. 2004); *Fulcrum Financial Partners v. Meridian Leasing Corp.*, 230 F.3d 1004, 1011 (7th Cir. 2000)). Nothing in the record raises any red flags as far as policy is concerned; indeed, Oakton has alleged claims under both the Wisconsin and Illinois franchise or dealerships statutes. The parties' policy arguments address whether it is appropriate to apply the laws of the various states at issue here to what amounts to a single contract claim – the doctrine of depecage; they do not address whether applying the law of one state – Wisconsin, the chosen state – violates such principles. And the Court has no reason to suspect that the contract is for any reason invalid; certainly, the parties are not arguing the point In short, the Court finds that the choice-of-law provision in the Distributor Agreements should be respected. And, if Wisconsin law applies, the Illinois Franchise Disclosure Act – which provides the only feasible argument against transfer to the Eastern District of Wisconsin – would play no role. Given the simplicity and straightforwardness of this line of reasoning, the Court has struggled to understand why U-Line opted instead to hang its hat on the comparatively complex doctrine of depeçage.

Although the parties' strategy on the motion to dismiss is questionable, the venue issue is clear: this case belongs in the

Eastern District of Wisconsin. Oakton and U-Line expressly agreed that the contracts they signed would be governed by Wisconsin law and that any disputes arising out of those contracts, or otherwise arising out of their relationship, would be resolved in the Eastern District of Wisconsin. The Court sees no reason why those provisions - voluntarily and mutually agreed upon - should not be given effect.

## Conclusion

For the reasons explained above, and consistent with Illinois' choice-of-law principles, the Court finds that the choice-of-law clause in the parties' Distributor Agreements is valid. Thus, consistent with the parties' agreement, Wisconsin law shall govern this dispute; the Illinois Franchise Disclosure Act, including the provision that would otherwise nullify the parties' forum selection clause, has no effect here. Accordingly, the case is transferred, consistent with the parties' contractual forum selection clause, to the United States District Court for the Eastern District of Wisconsin. Any further arguments concerning Rule 12 may be addressed in that forum.

Dated: September 20, 2006

ENTER:

*Arlander Keys*
ARLANDER KEYS
United States Magistrate Judge